Filed 3/26/26  P. v. Tillman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C101169 |
| v. | (Super. Ct. No. 21CF00078) |
| DIONTANAE JEROME TILLMAN, | |
| Defendant and Appellant. | |

Defendant Diontanae Jerome Tillman shot and killed Kevin Murillo while robbing him of cocaine.  A jury found defendant guilty on two counts of murder (one based on malice and the other based on felony murder) and one count of robbery.  The jury also found various firearm enhancement allegations to be true, including that defendant personally and intentionally discharged a firearm causing Murillo's death.  The trial court sentenced defendant to 50 years to life in state prison.

1

Defendant now contends (1) the trial court erred in admitting testimony about the possible meaning of his teardrop tattoo, and (2) his trial counsel was ineffective in (a) failing to object to the tattoo evidence on the grounds asserted in this appeal, and (b) failing to object to certain misrepresentations purportedly made by the prosecutor during his closing and rebuttal arguments.

We conclude defendant's first contention is forfeited, and he has not established ineffective assistance of counsel. We will affirm the judgment.

BACKGROUND

During a post-arrest police interview, defendant confessed to shooting Murillo multiple times and admitted that he did so while robbing him of cocaine. Our recitation of relevant facts is based on that confession and on undisputed corroborating evidence.

On January 5, 2021, at around 6:30 p.m., defendant and three others drove to a convenience store so that defendant could rob Murillo. Defendant set up the robbery by contacting Murillo on social media and agreeing to buy an ounce and a half of cocaine from him for $1,250. About 30 minutes before meeting Murillo at the convenience store, defendant responded to a text message from a girlfriend, saying that he was going to "hit a lash, RQ." One of the detectives who interviewed defendant testified that "lash" was street slang for robbery and "RQ" was an abbreviation for "real quick." Defendant confirmed this understanding during the interview when he admitted that he " 'went there to rob him.' " Defendant said he viewed Murillo as a " 'soft' " person who pretended to be hard.

The group pulled up next to Murillo's car, and defendant got into Murillo's front passenger seat. He had a loaded .40-caliber semiautomatic handgun with a 15-round magazine in his jacket pocket. Defendant asked Murillo: " 'Do you have the stuff?' " Murillo told him it was inside the passenger side door pocket. Defendant grabbed the cocaine and then saw that Murillo had pulled a gun on him. During the interview, defendant said he was thinking, " 'Do you know who I am?' " In addition to his gun,

2

defendant had some cash in his jacket pocket. He told Murillo to "chill" and said: " 'I have money, look.' " Defendant pulled some of the cash out of his pocket "to buy time so that he could reach into his pocket to get his own gun." Defendant pulled his gun, Murillo fired a round, and defendant returned fire with many rounds.

The round fired by Murillo scraped defendant's shoulder. The rounds fired by defendant struck Murillo 12 times, ending his life. Forensic testimony concerning the condition of Murillo's gun, as well as expended bullets and shell casings found inside the car, confirmed that Murillo fired once and defendant fired at least 14 times.

Although defendant admitted during a subsequent police interview that he shot Murillo multiple times while robbing him of cocaine, defendant's trial testimony differed from his police interview. On the witness stand, he denied robbing Murillo and instead claimed that he shot and killed him in self-defense when Murillo pulled a handgun and tried to rob defendant.[1]

The jury found defendant guilty of murder and robbery, and the trial court sentenced defendant to 50 years to life in prison.

DISCUSSION

I

Defendant claims the trial court erred by admitting testimony about the possible meaning of his teardrop tattoo.

Towards the end of the prosecution's case, the prosecutor asked a detective about defendant's booking photo. The prosecutor asked whether there was anything significant in the photo that caught his attention. The detective answered: "Yes. He has a teardrop tattoo to the side of his right eye." The prosecutor asked: "Based on your training and experience as an officer, does that tattoo carry any significance at all?" The detective

---

[1] Escobar also testified for the defense and corroborated defendant's testimony that they went to the convenience store to buy cocaine from Murillo, not to rob him.

answered: "It can. Specifically with jail, if you kill someone, you can get the tattoo." Defense counsel objected on grounds of speculation. The trial court overruled the objection. The prosecutor immediately ended the direct examination. At no point during the cross-examination or redirect examination was the tattoo mentioned. And the tattoo was not mentioned again during the remainder of the trial.

Defendant argues on appeal that the teardrop tattoo evidence amounted to improper character evidence, i.e., that he had previously been incarcerated and had previously killed someone, and because he presumably agreed to get the tattoo, the jury might have inferred that he took pride in having killed someone, making the tattoo evidence analogous to the erroneous admission of an involuntary confession. Whether viewed as improper character evidence or an involuntary confession, defendant claims the teardrop tattoo evidence violated his constitutional rights.

"Evidence Code section 353, subdivision (a), provides that a court may not reverse a judgment based on error in admitting evidence unless 'an objection to or a motion to exclude or to strike the evidence . . . was timely made and so stated as to make clear the specific ground of the objection or motion.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 130 (*Valdez*).) Based on that statute, the California Supreme Court has consistently held that a defendant's failure to make a timely and specific objection on the ground asserted on appeal renders the ground not cognizable. The objection must " 'fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling.' " (*Ibid.*)

Here, although defense counsel objected to the tattoo evidence in the trial court, he did so by asserting the ground of speculation, not the specific grounds raised in this appeal. The objection was insufficient to preserve for appeal the contention that the evidence amounted to inadmissible character evidence. (*Valdez, supra*, 55 Cal.4th at

4

p. 130.) The same is true as to defendant's appellate claim that admission of propensity evidence violated his due process rights. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 21, fn. 5.) Even as to whether the tattoo evidence amounted to an involuntary confession, the California Supreme Court has held that such a claim "generally will not be addressed for the first time on appeal." (*People v. Ray* (1996) 13 Cal.4th 313, 339.) The contentions are forfeited.

II

Anticipating forfeiture, defendant contends his trial counsel provided ineffective assistance by (a) failing to object to the tattoo evidence on the grounds asserted in this appeal, and (b) failing to object to certain misrepresentations purportedly made by the prosecutor during his closing and rebuttal arguments.

" 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus.' [Citation.]" (*People v. Gray* (2005) 37 Cal.4th 168, 206-207.)

5

A

Defendant contends his trial counsel provided ineffective assistance by failing to object to the tattoo evidence on the grounds asserted in this appeal. His defense counsel was not asked why he did not object on such grounds, but a satisfactory explanation appears to this court. After defense counsel's objection on the ground of speculation was overruled, the prosecutor asked no further questions about the tattoo and immediately ended the direct examination. The detective's answer about the tattoo's possible meaning was brief. Defense counsel could have reasonably concluded that objecting again would unnecessarily draw further attention to defendant's tattoo and its potential meaning. Counsel could have reasonably concluded that even if the trial court had sustained a second objection based on improper character evidence, and even if the trial court had instructed the jury to disregard the detective's statement, it would have risked highlighting the statement in the minds of the jurors. The situation is analogous to when trial counsel declines to request a limiting instruction as "a reasonable tactical choice . . . to avoid directing the jury to focus on the evidence" at issue. (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 934.)

In any event, defendant has not demonstrated prejudice. The evidence establishing his guilt of the charged crimes is overwhelming. During defendant's police interview, he admitted multiple times that he shot and killed Murillo while robbing him of cocaine. The prosecution's case, including defendant's prior confession, overwhelmingly proved his guilt. The detective's brief statement about the possible meaning of his teardrop tattoo does not undermine our confidence in the outcome of this case.

B

Defendant further claims his trial counsel provided ineffective assistance by failing to object to the following statements made by the prosecutor during his closing and rebuttal arguments.

6

In closing, the prosecutor said defendant's assertion that he acted in self-defense was belied by his police interview: "[He] never believed he needed to use force. In fact, he believed the opposite. 'He's not going to shoot me. There's no way, he's not that kind of guy,' is what he thought. 'Kevin Murillo is soft; he's not going to shoot me. Even when he has a gun, I'm not scared.' He said it. 'I didn't think he was going to shoot me. Like I real-life didn't think he was going to shoot me. In my mind, I just – he just wasn't going to shoot, because I was down, I had my gun out. [¶] When people make drug deals, they have their straps on their lap all the time. The fact that Kevin Murillo allegedly – if you believe that portion of it, sure, even if he had his gun out on his lap, that's not frightening; right? Because drug dealers have their guns out all the time. He said it himself. I asked him, 'Just the fact that he had the gun out, did that frighten you?' [¶] 'No, it did not.' "

A short time later, the prosecutor argued: "So even if you believe that Kevin Murillo had a gun out, the defendant's own story puts to bed the idea of self-defense, because he wasn't scared. [¶] He said that Kevin Murillo never shot until he pulled his gun out, until the defendant had his gun. [¶] So let's – even if we pretend to believe the defendant's story that the victim had a gun out, right – who escalates the situation? The defendant, by pulling out his firearm. Not in self-defense, but because he's going to rob Kevin Murillo back."

Finally, during the rebuttal argument, the prosecutor stated: "It would be nice if we knew exactly what happened in the car. It would be nice if we knew why did Kevin Murillo have his firearm out. It would be nice if we knew why did Kevin Murillo shoot. [¶] Is it because, as [defendant] suggests, you know, drug dealers sometimes will have their gun out just on their laps? . . . Is it because the defendant is trying to rob him and saying, 'Hey, give me your stuff'? . . . Does he pull his firearm because he's getting shot?"

Defendant claims the argument misrepresented the record because, although defendant said in his interview that drug dealers have guns on their laps during drug deals, he never claimed Murillo did so. Defendant points to his testimony on cross-examination, where he asserted that a gun on a lap was not necessarily frightening, but Murillo's gun was not on his lap. He also points to his earlier direct testimony, where he claimed that Murillo was pointing the gun at him.

Defendant does not directly raise a claim of prosecutorial misconduct, effectively conceding that such a claim is forfeited by defense counsel's failure to object. (See, e.g., *People v. Powell* (2018) 6 Cal.5th 136, 171.) Defendant's claim of ineffective assistance fails because defense counsel could have reasonably concluded that the prosecutor's argument was not particularly misleading. Defendant said during his interview that drug dealers often have guns out during drug deals. The prosecutor's argument acknowledged that as a possibility, but argued defendant was not scared. Although the prosecutor did not mention defendant's testimony that Murillo pointed the gun at him, defendant cites this court to no authority holding that a prosecutor must provide a complete summary of a defendant's testimony during closing argument. A prosecutor may argue any state of facts " 'as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. . . .' [Citation.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 567.) The record supports a fair argument that defendant set up a drug deal with the intention of robbing Murillo of cocaine, defendant took the cocaine from the passenger door compartment, defendant realized Murillo had his gun out, defendant was not afraid of Murillo or his gun, defendant stalled for time by mentioning cash, defendant pulled his own gun out, Murillo fired one shot, and defendant fired multiple shots, killing Murillo.

In any event, as we have already explained, the evidence of defendant's guilt was overwhelming. Even if defense counsel should have objected to the argument, defendant has not established prejudice.

8

DISPOSITION

The judgment is affirmed.

_____/S/_____
MAURO, Acting P. J.

We concur:

_____/S/_____
KRAUSE, J.

_____/S/_____
BOULWARE EURIE, J.

9